## WALDEN v. CREGO'S ESTATE.

1. JUDGMENT—COLLATERAL ATTACK—JURISDICTION.

   A final judgment against a garnishee defendant cannot be attacked for alleged technical defects in the proceedings but may be collaterally impeached only if jurisdiction was absent in the court.

2. EXECUTORS AND ADMINISTRATORS—GARNISHMENT—DISTRIBUTION OF ESTATES.

   An executor or administrator is subject to garnishment process when the court has decreed a distribution of the proceeds in his hands and he has become directly accountable to the distributee or whenever the distributee may maintain an action at law against such administrator or executor therefor.

3. JUDGMENT—GARNISHMENT—EXECUTORS AND ADMINISTRATORS—COLLATERAL ATTACK.

   A final judgment against an administrator, as garnishee defendant, concerning share ordered distributed to principal defendant, would be binding on all the heirs, unless directly appealed from, and could not be collaterally attacked.

4. GARNISHMENT—DISTRIBUTED SHARE OF ESTATE.

   Probate court's order of distribution of an estate which required that portion assigned to principal defendant be retained by the administrator until the further order of the court because such interest had been attached by bank for judgment obtained against the principal defendant *held*, to constitute an absolute allotment subject to garnishment by same party as plaintiff, notwithstanding the restriction.

5. SAME—DISTRIBUTED SHARE OF ESTATE—PREVIOUS ATTACHMENT.

   Plaintiff in garnishment proceedings against administrator of estate who had been ordered to distribute a share thereof to principal defendant would not be barred from reaching identical interest which it had previously sought to attach and order of distribution ordered administrator to hold such share until further order of the court because of such attachment.

6. SAME—ACTION ON ADMINISTRATOR'S BOND—COLLATERAL ATTACK
ON JUDGMENT—JURISDICTION.

In action on bond of administrator to recover amount which he
had failed to pay plaintiff, a judgment creditor of a dis-
tributee of the estate and who had previously secured a
judgment against such administrator in garnishment proceed-
ings that was not appealed from, whether or not the court
in the garnishment proceedings correctly decided that the
particular fund was garnishable *held,* not such a jurisdictional
question as can be collaterally attacked in instant action,
where defendant was properly before the court as garnishee
defendant.

7. SAME — NONRESIDENTS — AFFIDAVIT — CURING DEFECTS—DISCLO-
SURE.

Affidavit for writ of garnishment which failed to state the resi-
dence of the garnishee defendant, a nonresident of the county
in which the garnishment proceeding was begun, was cured of
irregularity when the garnishee defendant filed a disclosure
and respected the writ, as such defect was not jurisdictional.

8. SAME—NONRESIDENTS—SERVICE OF PROCESS—STATUTES—AFFIDA-
VITS.

Failure of affidavit for writ of garnishment to state that gar-
nishee defendant was a nonresident of the county in which
proceeding was begun did not constitute a noncompliance
with statute relative to service of process on nonresident
garnishee defendant (3 Comp. Laws 1929, § 14892).

9. SAME—NONRESIDENTS—SERVICE OF PROCESS—DISCLOSURE.

Any defect as to service of process upon garnishee defendant,
a nonresident of county in which garnishment was begun, was
cured by filing of disclosure by such garnishee defendant and
his respecting the writ (3 Comp. Laws 1929, § 14892).

10. SAME—AFFIDAVIT—SUFFICIENCY.

Affidavit for writ of garnishment reciting that ''deponent fur-
ther says that he is justly apprehensive of the said sum''
sought to be garnisheed *held,* not fatally defective because
the word ''deponent'' was used instead of ''affiant,'' such
words being synonymous under the circumstances (3 Comp.
Laws 1929, § 14857).

11. SAME—AFFIDAVIT—STATUTES.

An affidavit for a writ of garnishment need not be a verbatim
repetition of the language of the statute (3 Comp. Laws
1929, § 14857).

12. WORDS AND PHRASES—DEPOSITION.

　　A deposition is a general expression embracing all written evidence verified by oath, including affidavits.

13. GARNISHMENT—AFFIDAVIT—AMENDMENT.

　　Affidavit for writ of garnishment which failed to include the words "of the loss" in recital that "deponent further says he is justly apprehensive of the said sum" sought to be garnisheed is considered as amended to include such omitted words where disclosure was filed without objection, it is not contended that garnishee defendant was misled by such omission, and trial court apparently considered the affidavit as amended (3 Comp. Laws 1929, § 14857).

14. EXECUTORS AND ADMINISTRATORS—LEAVE TO SUE ON BOND.

　　Where a judgment regularly entered in garnishment proceeding against an administrator, as garnishee defendant, was unappealed from, it was a valid outstanding claim against him, and, being unpaid to plaintiff who held such judgment for moneys absolutely due a distributee, plaintiff was a "person aggrieved by such maladministration" of the estate as to entitle him to apply for, and be granted, permission to sue on the administrator's bond (3 Comp Laws 1929, §§ 15936, 15939).

15. SAME—BREACH OF BOND—LEAVE TO SUE.

　　It is not necessary that a breach of an administrator's bond be conclusively shown to exist before an order allowing a suit on the bond is justified (3 Comp. Laws 1929, §§ 15936, 15939).

16. SAME—LEAVE TO SUE NOT AN ADJUDICATION ON MERITS.

　　An order allowing action to be brought on an administrator's bond is not an adjudication on the merits of the liability of the bondsmen but merely establishes the right of a plaintiff to bring suit (3 Comp. Laws 1929, §§ 15936, 15939).

17. SAME—ACTION ON BOND—SURETY'S LIABILITY.

　　In order to recover in an action on an administrator's bond, it is necessary to show that the sureties are under legal obligation to satisfy the judgment against the administrator (3 Comp. Laws 1929, §§ 15936, 15939).

Appeal from Cass; Warner (Glenn E.), J. Submitted January 4, 1939. (Docket No. 30, Calendar No. 40,318). Decided April 25, 1939.

In the matter of the estate of Jane Newton Crego, deceased. W. E. Walden, receiver of the Peoples State Bank of Sheridan, filed petition for leave to sue administrator. Leave denied. Petitioner appealed to circuit court. Reversed and leave granted. Estate appeals. Affirmed.

*Brake, Davis & Miel,* for petitioner.

*Clarence M. Lyle* and *Ulysses S. Eby,* for estate.

BUTZEL, C. J. Another phase of the present litigation, as set forth in *Walden* v. *Green,* 282 Mich. 385, should not be confused with the questions involved in the instant case.

In 1932, plaintiff, after foreclosing a mortgage in the circuit court for the county of Montcalm, given by John J. Springsteen and wife to the Peoples State Bank of Sheridan, and obtaining a deficiency decree, levied upon lands in Cass county belonging to the Crego estate, in which Springsteen was an heir. No further proceedings were taken under the levy and the land was ordered sold. At such time, Jesse Green, as administrator, filed a bond for the sale of the realty. On June 18, 1935, the court's attention was directed to the levy made against the lands of the estate in order to reach the share of John J. Springsteen, and the court entered an order in which it was stated that the administrator was required to hold the share belonging to Springsteen until the levy was discharged and the land freed from the levy and all liability under the judgment referred to in the levy. On June 24, 1935, the probate court of Cass county made a general order for partial distribution of moneys on hand to the various heirs, including a payment of the sum of $4,500 to John J. Springsteen, a cousin, but directed in addition that

the administrator "retain that portion hereby assigned to John Springsteen until the further order of this court, it appearing that said interests have been attached by a bank for judgment obtained against him." While the wording of the order is somewhat vague, there can be no doubt that this order, as well as the previous one, definitely authorized the payment of $4,500 to John J. Springsteen, subject, however, to a release of the levy.

On September 5, 1935, an original suit against Springsteen was commenced by plaintiff in the Montcalm circuit court, based on the decree for the mortgage deficiency, and at the same time a suit in garnishment was brought against the administrator of the Crego estate. The administrator disclosed that, while he held other funds belonging to the estate which had not been finally apportioned to the heirs, the sum of $4,500 had been apportioned to Springsteen as his distributive share. No mention was made of the probate orders directing the garnishee defendant to hold Springsteen's share until further notice from the court. The administrator denied, however, that the funds in his hands were subject to garnishment. Judgment was rendered against the administrator, as garnishee defendant, in the sum of $4,500.

In the instant case, permission to bring suit against the administrator and his sureties on both his general bond and the bond filed at the time the realty was sold, because of Green's failure to pay this judgment, was denied plaintiff in the probate court. On appeal, the circuit court reversed the decision of the probate court and entered an order granting such permission. Defendant administrator has appealed.

Appellant raises a number of objections to the validity of the garnishment judgment rendered De-

cember 24, 1935. No appeal was taken from the judgment. Furthermore, the garnishee defendant waited almost a year before he moved to vacate it. An order was entered denying that motion. While the motion to set aside the judgment against the administrator states that it was made by the garnishee defendant, and the order refers to the Dowagiac National Bank, the motion itself refers to the judgment of December 24, 1935, which was rendered against the administrator. The designation of the Dowagiac National Bank was evidently a clerical error. The circuit court took this view and the testimony supports his interpretation. The judgment against the garnishee having become final, it cannot be attacked for alleged technical defects in the proceedings. It may be collaterally impeached only if jurisdiction was absent in the court. *Weiss-Kemnitz Co.* v. *Ehlert,* 241 Mich. 34.

It is such lack of jurisdiction that appellant particularly urges in various assignments of error. Foremost is the claim that the defendant, being an administrator, was not subject to garnishment process, and that for this reason there was a failure of jurisdiction over the person. While there are dicta in some of the earlier Michigan cases suggesting that administrators and executors are not subject to garnishment, it is clear that under *Hudson* v. *Saginaw Circuit Judge,* 114 Mich. 116 (47 L. R. A. 345, 68 Am. St. Rep. 465), no such generalization can be countenanced. A careful examination of that case reveals that the difference between the majority and minority of the court was whether under the particular facts there presented, garnishability of the executors was established. The majority opinion indicated that a final order by the probate court distributing the funds had not been made "nor have the executors become directly and absolutely accountable to

the principal defendant.'' Under the rules laid down
in Rood, Garnishment, § 32, and 2 Shinn, Attach-
ment and Garnishment, § 511, quoted by the majority
of the court, we believe that an executor or admin-
istrator is subject to garnishment process when the
court has ''decreed a distribution of the proceeds in
the hands of the administrator,'' when he has be-
come directly accountable to the distributee, and
''whenever the person to whom he is to pay the
legacy or distributive share may maintain an action
at law against such administrator or executor.'' In
so holding, we follow the current of modern authori-
ties in other jurisdictions. (See the cases collected
in 59 A. L. R. 768.)

The fund sought in the garnishment proceedings
was only that which the court had ordered distrib-
uted previous to the garnishment proceedings and
not that for which no order of distribution had been
made. The defendant administrator became ''di-
rectly and absolutely accountable to the principal
defendant'' under the orders of the probate court,
June 18, 1935, and June 24, 1935. The latter order,
in particular, was a general and final decree of dis-
tribution to the nine heirs of Jane Newton Crego,
including John J. Springsteen. Unless directly ap-
pealed from, it was binding on all the heirs and could
not be collaterally attacked. *In re Estate of Taylor,*
271 Mich. 404, 408; *In re McNamara's Estate,* 167
Mich. 406.

Its character as an absolute allotment to the heirs
is not affected in whole or in part by the court's
further direction to defendant Greene to hold up the
actual delivery of the moneys to Springsteen until
his interest was cleared of plaintiff's levy. While
that direction may have restricted Springsteen's en-
joyment of the funds, we do not regard it as making

"conditional" what purports to be an unconditional order of distribution, so as to prevent garnishment of the administrator within the rules above set forth. In applying those rules we cannot forget the reasons which produced them. The personal representative of an estate is not to be embarrassed by a succession of writs issued against him, impeding his administration and complicating the winding up of the estate. But there is no reason why the shares of the distributees should not be subjected to payment of their just debts when the shares have been assigned and nothing remains to be done by the administrator save to turn over the funds. There is nothing in this record which indicates any irregularity in payment of the shares to the other heirs apportioned by the same order of June 24th. There is no claim that any remaining claims of creditors of the estate could not be satisfied adequately out of the still undistributed property of the estate. There is nothing indefinite about the share apportioned to John J. Springsteen. Defendant administrator himself regarded the moneys as absolutely due and owing Springsteen; his disclosure denied liability simply on the ground that as an administrator he was not subject to garnishment process. By allowing such process against him, his work as administrator is in no way impeded; the probate court is in no way interfered with; the only interest that appellant is trying to protect is that of a debtor seeking to evade payment of his creditors.

The sole reason for the direction to defendant to retain Springsteen's share was to safeguard plaintiff's interest in that share, which he had derived by virtue of his prior attachment. It would carry technical considerations to an extreme were we to defeat plaintiff's subsequent garnishment judgment be-

cause of these previous orders made for his benefit. By the writ of garnishment he sought to reach the identical interest reached by the levy, and, under the circumstances of the present case, the protection provided him by the probate court should not now be used to his prejudice.

Finally, if there was any irregularity in the garnishment proceedings, it could have been regularly challenged by appeal from the judgment rendered December 24, 1935, or appeal from the denial of the administrator's motion to set aside that judgment, made December 17, 1936. Instead, defendant waited until August, 1938, before making a collateral attack on the judgment. Within the rule we have recently laid down in *Joy* v. *Two-Bit Corporation,* 287 Mich. 244, the circuit court must be held to have had general jurisdiction over garnishment proceedings against an administrator, and there is no doubt that defendant was properly before the court. Whether or not the court correctly decided that the particular fund was garnishable is not such a jurisdictional question as can be collaterally attacked under the facts and circumstances as presented on appeal.

The garnishment suit was begun in the circuit court for the county of Montcalm while the writ was served in the county of Cass. The affidavit for writ of garnishment failed to state the residence of the garnishee defendant and it is claimed that this was a fatal defect. Such irregularity was cured when the garnishee defendant filed a disclosure and respected the writ. *Nichol* v. *Nevers,* 196 Mich. 203. It cannot be regarded as going to the jurisdiction of the court. 3 Comp. Laws 1929, § 14892 (Stat. Ann. § 27.1890), cited by appellant, at most controls service of process, and if any defect as to service existed, it was likewise waived. *Wiener* v. *Valley Steel Co.,* 254 Mich. 681; *Chamberlain* v. *Wallace,* 176 Mich. 609.

Another objection to the court's jurisdiction is urged because the affidavit of garnishment read that this "deponent further says that he is justly apprehensive of the said sum of $5,247.87," et cetera. Use of the word "deponent" instead of the word "affiant," as set forth in 3 Comp. Laws 1929, § 14857 (Stat. Ann. § 27.1855), is claimed to be a fatal error. We have never said that the affidavit must be a verbatim repetition of the language of the statute. A deposition is a general expression embracing all written evidence verified by oath, including affidavits. *Baker* v. *Magrath,* 106 Ga. 419 (32 S. E. 370) ; *Arnold* v. *State,* 48 Okla. Cr. 452 (132 Pac. 1123). Under the circumstances "affiant" and "deponent" may be said to be synonymous.

Objection is further made that defendant left out the words "of the loss," as set forth in the quoted statute. While garnishment is a statutory proceeding and that statute must be strictly observed, nevertheless amendments have been permitted where a clerical error is clearly shown. Appellant not only filed a disclosure without objection, but he does not contend that he was in any way misled by the omission of the words, and the trial court apparently considered the affidavit as amended. If not, we shall consider it so amended. *Wattles* v. *Wayne Circuit Judge,* 117 Mich. 662 (72 Am. St. Rep. 590) ; *Union National Bank of Chicago* v. *Muskegon Circuit Judge,* 117 Mich. 678.

There can, therefore, be no doubt that the judgment rendered against appellant December 24, 1935, was regularly entered and, being unappealed from, was a valid outstanding claim against the administrator, which he has not paid despite demand. Nevertheless, it is argued that his failure to make payment does not occasion any liability on his bonds. We do not think there can be any doubt that the

holder of a garnishment judgment against an administrator for moneys absolutely due a distributee is a "person aggrieved by such maladministration" of the estate within the meaning of 3 Comp. Laws 1929, § 15936 (Stat. Ann. § 27.3135). As such, appellee could properly apply for permission to sue on the administrator's bond (3 Comp. Laws 1929, § 15939 [Stat. Ann. § 27.3138]); the circuit court correctly granted him such permission.

It is not necessary, as appellant asserts, that a breach of the bond be conclusively shown to exist before the order allowing a suit on the bonds is justified. So much is implicit in our holding in *Robbins, for use of Wood,* v. *Burridge,* 128 Mich. 25. See, also, *Welsh* v. *Van Auken,* 76 Mich. 464, 467; *Wayne Probate Judge, for use and benefit of Voss,* v. *Budnick,* 266 Mich. 209, 214. The order of the circuit court granting leave to sue was not an adjudication on the merits of the liability of the bondsmen. It properly established, however, plaintiff's right to bring the suit. In order for him to recover, it will be necessary to show that the sureties are under legal obligation to satisfy the judgment.

The order of the trial judge is affirmed, with costs to plaintiff.

Wiest, Bushnell, Sharpe, Potter, Chandler, North, and McAllister, JJ., concurred.